BARKETT, Circuit Judge,
dissenting:
I dissent because I do not believe that the plaintiffs have standing in this case. Wilson and Middlebrooks filed suit to terminate an injunction entered in an earlier case in which they never participated, either as plaintiffs, defendants or interve-nors. Because they fail to demonstrate that they have suffered any concrete and particularized injury stemming from this earlier injunction, they have also failed to demonstrate that they have standing under Article III of the Constitution to bring these claims. See Federal Election Comm’n v. Akins, 524 U.S. 11, 23-24, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998); Arizonans for Official English v. Arizona, 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). On this record there is no basis for concluding that Wilson and Middlebrooks satisfy the elements of standing, either as plaintiffs in this independent action or in order to intervene in the earlier lawsuit.
Before a federal court may exercise jurisdiction over a claim brought before it, the court must determine that the litigants have, standing to bring that suit. As the Supreme Court has emphasized repeatedly,
[t]he question of standing is not subject to waiver, however: “[We] are required to address the issue even if the courts below have not passed on it, and even if the parties fail to raise the issue before us.” The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines.
United States v. Hays, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (emphasis added) (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 230-231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)); see also Arizonans, 520 U.S. at 73, 117 S.Ct. 1055. The Supreme Court has “made clear that it is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.” Hays, 515 U.S. at 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (citations and internal quotation marks omitted). Wilson and Middlebrooks have not borne this burden.
In order “[t]o qualify as a party with standing to litigate, a person must show, first and foremost, an invasion of a legally protected interest that is concrete and par *1311 ticularized and actual or imminent.” Arizonans, 520 U.S. at 64, 117 S.Ct. 1055 (citing Lujan, 504 U.S. at 560, 112 S.Ct. 2130) (internal quotation marks omitted). As the Court made clear in Lujan, in order to be “particularized,” the injury “must affect the plaintiff in a personal and individual way.” Id. at 560-61 & n. 1, 112 S.Ct. 2130. The Supreme Court has “repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power.” Hays, 115 S.Ct. 2431, 515 U.S. at 743 (citations and internal quotation marks omitted).
In its footnote, the majority relies on Meek v. Metropolitan Dade County, 985 F.2d 1471, 1480 (11th Cir.1993), to support standing in the instant case. Meek, an Eleventh Circuit case decided prior to the Supreme Court’s decisions in Arizonans and Hays, stated that individuals have a private right “to vindicate important personal interests in maintaining the election system that governed their exercise of political power, a democratically established system that the district court’s order had altered.” Id. However, in light of more recent Supreme Court pronouncements on standing, I do not think that such an ill-defined interest is sufficiently concrete to support standing under Article III.[1]
In Hays, the Supreme Court expressly affirmed the rule against generalized grievances, holding that the mere fact that appellees in that case were residents and voters of Louisiana was not sufficient to give them standing to challenge Louisiana’s congressional redistricting plan. The Court rejected appellees’ position that “anybody in the State has a claim,” Hays, 515 U.S. at 743-44, 115 S.Ct. 2431, and restricted standing to “those who are personally denied equal treatment” by the challenged discriminatory conduct. Id. (emphasis added). The Court contrasted the generalized grievance asserted by ap-pellees in that case with the type of concrete equal protection injury that would be sufficient to sustain standing. The Court found that residents of a racially gerrymandered district would have standing to challenge the redistricting because “[voters in such districts may suffer the special representational harms racial classifications can cause in the voting context.”[2] Id. at 745, 115 S.Ct. 2431.
The panel in Meek rejected the contention that the intervenors had only nonjusticiable generalized grievances on the grounds that “if we accepted such an argument, we would be forced to conclude that most of the plaintiffs also lack standing, a conclusion foreclosed by the many cases in which individual voters have been permitted to challenge election practices,” citing as precedent Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971), and Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The recent Supreme Court cases make clear that this reasoning misconceives the nature of the injury alleged in voting rights cases. Plaintiffs’ standing to assert their claims against the challenged election practices in Whitcomb, 403 U.S. at 128-29, 91 S.Ct. 1858, and Carr, 369 U.S. at 207-8, 82 S.Ct. 691, derived not from their status as individual voters, but from the fact that they were personally denied equal treatment in violation of the Fourteenth Amendment. Similarly, the plaintiffs in Meek alleged a concrete injury in the form of vote dilution under Section 2 of the Voting Rights Act. See Meek, 908 F.2d at 1541-42. Those *1312 plaintiffs, as Hays recognizes, alleged cognizable injury to their statutory or constitutional rights.
In the instant case, plaintiffs fail to allege in their complaint either the 'exact nature of the alleged injury suffered or that they have any “personal stake” in the outcome of this litigation. See Lujan, 504 U.S. at 583, 112 S.Ct. 2130. We are left to speculate in what personal and individual way they have been injured.[3] Plaintiffs’ claim that the Court’s injunction in the earlier suit was ultra vires in light of Holder is no more specific than an assertion of the generalized right to have the government “act in accordance with law,” a right which the Supreme Court rejected in Allen v. Wright, 468 U.S. 737, 754, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Nor do plaintiffs articulate any cognizable theory of harm under equal protection or vote dilution jurisprudence. To the contrary, the majority writes that Wilson and Middlebrooks “seek to protect their interests in being free from an illegal court-imposed electoral system.” This' characterization, and the concomitant implication that all of Dallas County would have standing to bring suit because “all of Dallas County is being subjected to an illegal election scheme,” only serves to underscore the generalized nature of Wilson and Middlebrook’s grievance.. As the Hays court explained,
' Appellees insist that they challenged Act 1 in its entirety, not District 4 in isolation. That is true. It is also irrelevant. The fact that Act 1 affects all Louisiana voters by classifying each of them as a member of a particular congressional district does not mean-even if Act 1 inflicts race-based injury on some Louisiana voters-that every Louisiana voter has standing to challenge Act 1 as a racial classification. Only those citizens able to allege injury “as a direct result of having personally been denied equal treatment,” Allen, 104 S.Ct. 3315, 468 U.S. at 755, may bring such a challenge, and citizens who do so carry the burden of proving their standing as well their case on the merits.
Hays, 115 S.Ct. 2431, 515 U.S. at 746. The election scheme currently in place in Dallas County affects the voters of Dallas County to the same extent that the Louisiana districting scheme affected appellees in Hays. However, as that case makes clear, Article III requires something more than merely being affected in order to assert a cognizable, injury. The racial classification suffered by those residents of a racially gerrymandered district meets this requirement; mere “residence in the area directly affected by the allegedly illegal voting scheme,” maj. op. at 1303, n. 11, does not.
Just as Wilson and Middlebrooks have not demonstrated that théy have standing to bring this independent action, I do not believe that they could have overcome their standing problem by moving to intervene in the earlier suit. “The decision to seek review is not to be placed in the hands of concerned bystanders, persons who would seize it as a vehicle for the vindication of value interests.” Arizonans, 117 S.Ct. 1055, 520 U.S. at 64 (citations and internal quotations marks omitted). If the only bar to plaintiffs’ standing in this case were, as the majority suggests, the technical requirement that they intervene pursuant to Federal Rule of Civil *1313 Procedure 24 instead of bringing this lawsuit as an independent action, I agree that the case, under the circumstances presented here, might not warrant reversal.[4] However, “[a]n intervenor cannot step into the shoes of the original party unless the intervenor independently ‘fulfills the requirements of Article III.’ ” Arizonans, 117 S.Ct. 1055, 520 U.S. at 64 (internal citation omitted). Nothing in this record supports a conclusion that Wilson and Middlebrooks could do so here.
Because plaintiffs have failed to allege an injury which satisfies the requirements of Article III, I believe this suit should be dismissed for lack of jurisdiction, and accordingly, I dissent.

. The two decisions of other circuits which the majority cites in support of standing were also decided prior to Arizonans and Hays. See League of United Latin American Citizens, Council No. 4434 v. Clements, 999 F.2d 831 (5th Cir.1993); United Jewish Organizations of Williamsburgh, Inc. v. Wilson, 510 F.2d 512 (2nd Cir.1975).

. The Hays Court stated that a voter would have standing "[w]here a plaintiff resides in a racially gerrymandered district,” 515 U.S. at 745, 115 S.Ct. 2431, explaining that in such a situation "the plaintiff has been denied equal treatment because of the legislature’s reliance on racial criteria, and therefore has standing to challenge the legislature’s action.” Id. (emphasis added).

. Plaintiffs’ asserted right “not to be governed by public officials not chosen under state law using race-based selection criteria” is not a cognizable injury in the Article III sense. Merely sharing an interest generally with the public at large in the proper application of the Constitution and laws is insufficient to allege an injury. See Arizonans, 520 U.S. at 64, 117 S.Ct. 1055.

. The majority makes reference to Martin v. Wilks, 490 U.S. 755, 762-67, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), a Title VII race discrimination case. Wilks is not helpful on the issue of plaintiffs' Article III standing to bring an independent action, as it addressed only the issue of mandatory intervention. There was no question in that case as to whether plaintiffs alleged a cognizable injury.